IN THE U.S. DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Teresa White                                  :
10861 St. Rt. 521                             :
Sunbury, Ohio 43074                           :         Case No.
                                              :
v.                                            :         Judge:
                                              :
Big Walnut Local School District              :         **COMPLAINT WITH JURY**
Board of Education                            :         **DEMAND ENDORSED HEREIN**
110 Tippett Ct.                               :
Sunbury, Ohio 43074                           :

1. This is an action for damages for violations of the Americans with Disabilities Act ("ADA") as amended by the ADA Amendments Act 42 U.S.C.A. §12101 et. seq., and Ohio Revised Code §4112 et seq.

2. This court has subject-matter jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. §1331 and 29 U.S.C. §2617 and pendent jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

3. Plaintiff Teresa White is a resident of Delaware County, Ohio.

4. White is disabled as that term is defined by the ADA and RC §4112.01.

5. Defendant Big Walnut Local School District Board of Education (hereinafter "Board of Education") is a body politic and corporate, and a public school district headquartered in Delaware County, Ohio.

6. Defendant is and, at all times herein, was an employer within the meaning of the ADA and R.C. § 4112.01 *et seq.*

7. White was employed by the Defendant from July 2001 until June 17, 2022, when she was placed on an indefinite, unapproved leave of absence.

1

8. She served as a custodian at Big Walnut Intermediate School for the last 10 years of her employment.

9. In 2016 White suffered a work-related right shoulder injury.

10. She was subsequently reinjured and has been diagnosed with a rotator cuff tear and impingement syndrome.

11. Following her injury, White received conservative care and continued to work.

12. She was on light duty work restrictions, but with the cooperation of her co-workers and supervisors, was able to successfully perform the essential functions of her position.

13. White underwent surgery and was off work from March 7, 2019 through July 1, 2019.

14. She returned to work July 1, 2019, with a 10-pound lifting restriction, and with the cooperation of her co-workers and supervisors was able to successfully perform the essential functions of her position.

15. On February 1, 2021, she underwent a second surgery and was off work until June 7, 2021.

16. She returned to work with restrictions and once again, her work restrictions were accommodated by Defendant.

17. The accommodation of her restrictions was handled by her direct supervisors and coordinated between White and her co-workers.

18. There were no complaints about her limitations because White and her co-worker worked cooperatively to divide all their duties equally.

19. White's co-worker Joe Albright would handle the very heaviest work that she could not do, and she would perform extra cleaning duties to even out the workload.

20. For the 2021/2022 school year, Ms. White received a meets/exceeds expectation on her annual performance evaluation.

21. The evaluation was performed by Assistant Principal Nick Powell.

22. In August 2021, White's physician opined that her condition was at maximum medical improvement, with a 30-pound lifting restriction.

23. White asked her physician to provide her with work restrictions consistent with his opinion that she could lift no more than 30 pounds.

24. Her custodian role required "occasional" lifting of 50 pounds.

25. On August 18, 2021, White met with her supervisors: Doug Swartz, Asst. Principal Nick Powell, Principal Sarah Sandrock, and her co-worker Mr. Albright to discuss accommodation of her work restrictions.

26. Together, they devised a plan for accommodating her restrictions and dividing the custodial work.

27. The plan was reduced to writing and everyone was satisfied with the plan.

28. Upon receipt of her doctor's MMI determination, Defendant's Third-Party Administrator, Sedgwick Claims Management, informed the District that White did not "want to return to full duty."

29. Thereafter, Assistant Superintendent Mark Cooper scheduled a meeting with White, her supervisor Swartz, and Jeremy Buskirk, District Treasurer.

30. During the meeting on 8/26/2021, Cooper insisted that the District was "no longer going to accommodate" her work restrictions.

31. He indicated that she needed to return to work full duty or have a doctor's appointment scheduled where she would be released to full duty.

32. White explained that she and her supervisors and her co-worker had worked out a plan to equitably divide the duties that needed to be completed.

33. White asked Cooper to consider the plan and offered to show it to him. He refused.

34. He indicated that she could return to work when she was released to full duty.

35. He was unwilling to consider any accommodation that would have allowed her to continue working in her current role.

36. Thereafter, White was placed on an involuntary leave of absence.

37. After she and her Union representative met with the District Superintendent, she was allowed to use her accrued paid time off while she was on involuntary leave.

38. White filed an unfair labor practice charge against Defendant, but the charge was dismissed.

39. White sought consultation with a new doctor on or about November 4, 2021.

40. White's new physician scheduled her for a functional capacity examination on December 9, 2021.

41. The results of the evaluation indicated that White "demonstrated the ability to function in the Medium Physical Demand Category…" and that her job fell into a medium strength range.

42. As a result of the FCE, White was permanently restricted from lifting over 45 pounds. She was permitted to lift 45 pounds occasionally.

43. After the functional capacity evaluation, White bid on and was hired for a different custodial role at the High School.

44. A co-worker assigned to the High School encouraged her to apply and was ready, willing and able to work with her despite her restrictions.

45. Defendant did not allow White to assume the High School position because of her physical limitations.

46. There was no discussion of accommodations for the High School role.

47. She had no choice but to "fall back" to her previous custodian role to preserve her employment.

4

48. She remained on leave of absence.

49. On January 31, 2022, White and her Union Representative met with Cooper and the District's Attorney to, once again, seek accommodation for her disability.

50. She asked that the district provide accommodation to alleviate the heaviest lifting portions of her job and/or reassign her within her union.

51. She once again asked the Defendant to reconsider the plan that she, her supervisors, and her co-worker had formulated.

52. White signed a release to allow Sedgwick to obtain additional medical documentation to support her need for accommodation.

53. Defendant did not respond to her renewed request for accommodation until April 22, 2022.

54. In his response letter, Cooper advised that a job analysis had been conducted.

55. He detailed a list of physical demands associated with the functions of the custodian job that Plaintiff could not perform given her physical limitations.

56. Cooper characterized each of these individual physical demands as "essential."

57. The list included physical demands which are characterized as "Rare" on the Functional Demands Summary and constitute sub-parts of the "essential functions" of the job.

58. In his letter, Cooper foreclosed any further discussion about accommodation with White.

59. He stated, "due to the permanent restrictions and inability to perform all the required functions of the job, you no longer meet the qualifications for a custodial position. Furthermore, there are no other positions within your bargaining unit … for which you satisfy the qualifications of the position."

60. White appealed to the Board of Education arguing that she, and her co-workers, had devised strategies to overcome the physical demands that were outside her capabilities.

a. For example, to deal with lifting heavy trash bags overhead to dispose of them into a dumpster, White would empty the trash before it was completely full and use the side doors of the dumpster rather than slinging the bags overhead.

61. These "work around" solutions did not require White's co-workers to perform additional duties.

62. Despite her ongoing appeal for such modifications and accommodations, White was never allowed to return to work.

63. She was placed in the limbo of never-ending "unapproved" leave of absence.

64. White filed an EEOC charge alleging disability discrimination and retaliation on or about June, 2, 2022.

65. A Notice of Rights letter was issued on April 3, 2023.

**COUNT I**
**DISABILITY DISCRIMINATION**
**AND FAILURE TO ACCOMMMODATE**
**IN VIOLATION OF THE ADA**

66. White restates and incorporates the foregoing paragraphs as if fully rewritten herein.

67. White is "disabled" as that term is defined by the ADA.

68. She suffers with a physical condition that substantially limits a major life activity, has a history of such a disability and/or is perceived as having a physical impairment.

69. At all times relevant herein, White was able to successfully perform the essential functions of her custodian role(s) *with* reasonable accommodation.

70. White requested specific reasonable accommodations and suggested alternatives.

71. Defendant refused to consider the reasonable accommodations proposed by White even though she had demonstrated the accommodations were feasible.

72. Defendant refused to engage in the interactive accommodation process.

6

73. When the Defendant refused to consider accommodation that would have allowed White to perform the essential functions of her custodian role, White sought a transfer to a vacant position at the high school.

74. Defendant refused to grant White a transfer because of her physical restrictions.

75. White was placed on an involuntary leave of absence beginning on or about August 26, 2021 and thereafter, was never allowed to return to work.

76. White sought placement into an alternative role within her union as accommodation for her disability.

77. Defendant refused.

78. Placing White on unapproved and unpaid leave of absence was tantamount to terminating her.

79. White was placed on leave because of her disability.

80. White was placed on leave because she could not return to work "full duty."

81. This requirement is tantamount to a 100% healed rule which violates the requirements of the ADA.

82. White has been damaged by the Defendant's unlawful failure to engage in the interactive accommodation process.

83. White has been damaged by the Defendant's unlawful failure to provide Plaintiff with reasonable accommodation.

84. White has been damaged by being placed on indefinite, unpaid leave of absence because of her disability.

85. White is entitled to compensation for her damages, including, but not limited to, back pay, front pay, compensatory damages, damages for garden variety emotional distress, and attorney's fees.

## COUNT II
## DISABILITY DISCRIMINATION
## AND FAILURE TO ACCOMMODATE
## IN VIOLATION OF OHIO REVISED CODE §4112 *et seq.*

86. White restates and incorporates the foregoing paragraphs as if fully rewritten herein.

87. White is "disabled" as that term is defined by Ohio law.

88. She suffers with a physical condition that substantially limits a major life activity, has a history of such a disability and/or is perceived as having a physical impairment.

89. At all times relevant herein, White was able to perform the essential functions of her custodian role(s) with reasonable accommodation.

90. White requested specific reasonable accommodations and alternatives.

91. Defendant refused to consider the reasonable accommodations proposed by White and refused to engage in the interactive accommodation process.

92. When the Defendant refused to consider accommodation that would have allowed White to perform the essential functions of her custodian role, White sought a transfer to a vacant position at the high school.

93. Defendant refused to grant White a transfer because of her physical restrictions.

94. White was placed on an involuntary leave of absence beginning on or about August 26, 2021 and thereafter, was never allowed to return to work.

95. White sought placement into an alternative role within her union as accommodation for her disability.

96. Defendant refused.

97. Placing White on unapproved and unpaid leave of absence was tantamount to terminating her.

98. White was placed on leave because of her disability.

99. White has been damaged by the Defendant's unlawful failure to engage in the interactive accommodation process.

100. White has been damaged by the Defendant's unlawful failure to provide Plaintiff with reasonable accommodation.

101. White has been damaged by being placed on indefinite, unpaid leave of absence because of her disability.

102. White is entitled to compensation for her damages, including, but not limited to, back pay, front pay, compensatory damages, damages for garden variety emotional distress, and attorney's fees.

## COUNT III
## RETALIATION
## IN VIOLATION OF THE ADA

103. White restates and incorporates the foregoing paragraphs as if fully rewritten herein.

104. When White requested accommodations for her disability, she was engaged in protected activity as that term is defined by the ADA.

105. When White sought redress with the Board of Education to obtain reasonable accommodation, she was engaged in protected activity as that term is defined by the ADA.

106. Defendant was aware of White's protected activity.

107. White was placed on indefinite, unpaid leave in retaliation for her protected activity.

108. White has been damaged by Defendant's unlawful retaliation.

109. White is entitled to compensation for her damages, including, but not limited to, back pay, front pay, compensatory damages, damages for garden variety emotional distress, and attorney's fees.

## COUNT IV
## RETALIATION
## IN VIOLATION OF ORC §4112 *et seq.*

110. White restates and incorporates the foregoing paragraphs as if fully rewritten herein.

111. When White requested accommodations for her disability, she was engaged in protected activity as that term is defined by the Ohio law.

112. When White sought redress with the Board of Education to obtain reasonable accommodation, she was engaged in protected activity.

113. Defendant was aware of White's protected activity.

114. White was placed on indefinite, unpaid leave in retaliation for her protected activity.

115. White has been damaged by Defendant's unlawful retaliation.

116. White is entitled to compensation for her damages, including, but not limited to, back pay, front pay, compensatory damages, damages for garden variety emotional distress, and attorney's fees.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully prays that this Court grant her:

a. lost past and future wages and benefits in excess of $75,000;

b. compensatory damages;

c. an amount in excess of $75,000.00 in compensatory damages for garden variety emotional distress;

d. attorney fees and costs;

e. prejudgment and post judgment interest;

f. such other equitable and further relief as may be just and appropriate.

Respectfully Submitted,
/s/*Sharon Cason-Adams*
Sharon Cason-Adams (0067550)
AGEE CLYMER MITCHELL & PORTMAN
140 East Town St., Suite 1100
Columbus, Ohio 43215
Telephone: 614-221-3318
Facsimile: 614-221-7308
scasonadams@ageeclymer.com

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues triable before a jury.

/s/*Sharon Cason-Adams*
Sharon Cason-Adams